IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RAYMOND D. TAYLOR, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>VIRGINIA DEPARTMENT OF )<br>CORRECTIONS, *et al.*, )<br>    Defendants. ) | Civil Action No. 7:21-cv-564<br><br>By: Elizabeth K. Dillon<br>    United States District Judge |

**MEMORANDUM OPINION**

Raymond D. Taylor is a Virginia inmate proceeding *pro se* who, after an interstate transfer, is now housed in North Carolina. He filed this civil action pursuant to 42 U.S.C. § 1983 against two correctional officers: M. Hess and D. Fields. His amended complaint asserts two claims. In the first, Taylor claims that defendant Hess violated his Eighth Amendment rights when he failed to submit an emergency medical grievance of Taylor's, resulting in a delay in medical attention and physical and emotional suffering. In the second, Taylor alleges that both defendants violated his First Amendment right to freely exercise his religion when they contaminated non-common fare trays with common fare trays, either by mixing the two on a cart or by failing to change gloves in between serving the two types of trays.[1] (*See generally* Am. Compl., Dkt. No. 32-1.)

Pending and addressed herein are defendants' motion for summary judgment (Dkt. No. 90) and Taylor's motion for summary judgment (Dkt. No. 110), both of which are ripe for

---

[1] Taylor's complaint does not assert a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq.* or even reference the statute. Regardless, RLUIPA can only provide injunctive relief and not damages. *Firewalker-Fields v. Lee*, 58 F.4th 104, 113 (4th Cir. 2023) (explaining that under RLUIPA, the prisoner-plaintiff could obtain only equitable relief, not damages). In light of Taylor's transfer to a North Carolina prison, any RLUIPA claim against Hess or Fields is moot. *See id.* at 113–14 (holding that prisoner's transfer from the facility implementing the challenged policy mooted his RLUIPA claims).

disposition. For the reasons set forth herein, the court will grant defendants' motion and will deny Taylor's.

## I.  BACKGROUND

At all times relevant to this lawsuit, Taylor was housed at Wallens Ridge State Prison, and defendants Hess and Fields were correctional officers at Wallens Ridge.

**A.  Facts Relating to the Emergency Grievance and Taylor's Medical Care**

In his verified, amended complaint, Taylor alleges that in the early morning hours of September 25, 2019,[2] he gave Hess an emergency grievance. (Am. Compl. 2, Dkt. No. 32-1.) Although Hess gave plaintiff a receipt for the grievance, he never provided it to medical. Hess also failed to inform medical that Taylor was spitting up blood. Taylor claims that Hess's action caused him to go through "a lot [of] pain emotionally and physically." (*Id.* at 3.)

Taylor later grieved the issue, and Warden Manis found the grievance founded. Warden Manis noted that defendant Hess had issued a receipt for the emergency grievance at 2:45 p.m. on September 25, and that a copy of it was not in the proper file, and so apparently never was provided to medical. (Grievance Resp., Dkt. No. 99-1, at 40.)

Hess has provided an affidavit in this case. In it, he avers that when he began working at Wallens Ridge, he was trained as to how to process emergency grievances and was aware that they should be given priority and processed as soon as possible after receipt. (Hess Decl. ¶ 11, Dkt. No. 91-1.) Hess was told that the procedure directed him to sign the grievance, issue the receipt, and take the emergency grievance to the shift commander or other supervisor. (*Id.*) Staff other than Hess would review the grievance to determine whether it was an emergency and

---

[2] Other documents, including the duty roster for September 25, 2019, make clear that the grievance was actually given to Hess in the afternoon, not between 4:00 and 5:00 a.m., as Taylor alleges.

would respond accordingly. (*Id.*) Hess notes that he is not a medical professional and did not make any decisions concerning Taylor's—or any other inmate's—medical care. (*Id.*)

As to this specific incident, Hess does not recall receiving an emergency grievance from Taylor on September 25, 2019, although he does recall Taylor requesting one. He does not recall whether he took the completed form from Taylor. (*Id.* ¶ 12.) Defendant Hess also does not recall observing Taylor, or Taylor telling him that he was, in any medical distress. (*Id.*)

According to Taylor and the written response to Taylor's informal complaint from Lt. Light, Hess told Lt. Light that he did not take an emergency grievance from Taylor on September 25. (Dkt. No. 99-1, at 38.) Taylor insists this shows Hess "lied" about the incident and calls into question Hess's credibility. (Pl.'s Mot. Summ. J. 1–2, Dkt. No. 110-1.)

Because the timing and substance of medical care provided to Taylor at and around that time is relevant, the court briefly discusses that evidence, as well. It is summarized in the affidavit of Nurse Townsend, who also included Taylor's medical records from Wallens Ridge for September and October 2023. (*See generally* Dkt. No. 91-3.) First, Taylor was seen on September 30, 2019, by Dr. Mullis for his new intake health and physical screening and appraisal. (Townsend Aff. ¶ 6 & Encl. A, Dkt. No. 91-2.) During that assessment, Taylor did not complain that he had been or was spitting up blood, and the doctor noted that he had no history of present illness or mental health history. (*Id.*)

The following day, October 1, 2019, Taylor was seen again by medical. He complained that he was vomiting after eating and that this symptom had been occurring for several months. He did not complain of spitting up blood, nor did he complain of pain or diarrhea. Taylor did not allow the nurse to take his vital signs and the nurse noted that she could not fully assess him through the tray slot. The nurse nonetheless referred him to the doctor. (Townsend Aff. ¶ 9 &

3

Encl. A.)

On October 9, 2019, blood was drawn to run labs and Taylor was seen by the doctor. The doctor noted a history of femoral fracture and noted that this MBI was low for his height. (*Id.* ¶ 10 & Encl. A.) On October 14, 2019, Taylor presented to medical for sick call. Objective observations included that he was alert and oriented with a steady gait and no signs of distress. He also was observed "running up the steps without difficulty." He complained of knee pain and stomach issues. With regard to his stomach, he complained that after eating he would either vomit or experience diarrhea and that the medications he was taking for indigestion did not help. He also complained of intermittent constipation. He did not complain of spitting up blood or blood in his vomit. The nurse referred Taylor to the physician. (*Id.* ¶ 11.)

On October 24, 2019, Taylor was assessed by Dr. Mullins for the complaints. His BMI had improved to a normal range. Dr. Mullins adjusted Taylor's orthopedic medications and assigned him to a bottom tier for 365 days. (*Id.* ¶ 12.)

It is noteworthy that Taylor had the ability to speak with nurses at Wallens Ridge, who visit the pods at least twice each day. (*Id.* ¶ 4.) Inmates may file sick call requests to be seen by medical staff. They also may bring up medical concerns to nurses when they are in the housing unit, who may respond by telling the inmate to file a sick call request or who may ensure medical staff evaluates plaintiff. There is no record of Taylor complaining, and he does not allege that he complained to any nurses at any point during the relevant timeframe. Based on Townsend's review of his medical record, Taylor voiced no complaints to medical staff about allegedly spitting up blood in September 2019, despite "many opportunities to do so." (*Id.* ¶ 13 & Encl. A.)

### B. Facts Relating to the Serving of Common-Fare Trays

In his second claim, Taylor alleges that between September 17, 2019, and September 22, 2019, defendants Fields and Hess placed common fare food trays on the same cart as regular food trays. (Am. Compl. 2, 4). When Taylor grieved this claim, the warden found the grievance founded and stated that "appropriate administrative action" was taken on October 22 and 23, 2019. (Dkt. No. 99-1, at 35.) According to the Hess's affidavit, he was retrained on the proper policy for serving common fare and regular trays, both as to the carts and as to changing gloves. (Hess Decl. ¶¶ 7, 8).

Hess worked on four days during the period of September 17 and September 2022—September 17, 20, 21, and 22. Fields worked on September 18 and 19. (Hess Decl. ¶ 4; Fields Aff. ¶ 5 & Ex. A.)

Hess stated that he received training on how to handle common fare meal trays when he began working at Wallens Ridge. (Hess Decl. ¶ 5.) He knew that the common fare trays (which were orange) and the regular trays (which were gray or brown) were to be placed on separate carts. (*Id.* ¶ 6.) Occasionally, however, there were not enough carts and the available carts would be used to distribute both common-fare meals and regular ones. (*Id.*) At some point, it was brought to Hess's attention that one or more inmates complained about the way the common fare and regular food trays were being distributed, and he was retrained on how to handle trays. (*Id.* ¶ 7). Hess avers that he occasionally failed to deliver the food trays properly prior to being retrained, and states that his failures to properly deliver common fare and regular meal trays were inadvertent and unintentional. (*Id.* ¶¶ 8, 9.)

Defendant Hess also was trained to wear latex gloves while serving meals, but he does not recall being trained to change gloves between serving regular food trays and common

5

fare food trays. (*Id.* ¶ 8). As with the meal carts, however, when it was brought to his attention that he was to change gloves, he was retrained to use different gloves when handling each type of tray. (*Id.*) Again, he regrets that he inadvertently delivered common fare and regular meal trays to inmates without changing gloves prior to being trained to change my gloves, and he claims that any of his failures with regard to either meal carts or a failure to change gloves were accidental, not intentional. (*Id.* ¶ 9.) He avers that he did not consciously or intentionally deprive Taylor or any inmates of their First Amendment rights to practice their religions. (*Id.*)

For his part, defendant Fields usually did not handle common fare trays and does not remember Taylor, but it is possible that he served a common fare tray to Taylor. (Fields Aff. ¶¶ 4, 7, Dkt. No. 91-2). Like defendant Hess, defendant Fields stated that his training had included training on using different meal carts for common fare and regular meal trays. Unlike Hess, Fields stated that he would never have served both types of meals from the same cart consciously or intentionally. (*Id.* ¶ 8b.[3]) He also stated that he does not recall a situation in which common fare and regular meals were served from the same cart. (*Id.*)

Fields also had been trained to change gloves in between handling each type of tray, and recalls complying with that policy while distributing meal trays. (*Id.* ¶¶ 8a, 9a.) He avers that he changed gloves if he had to switch from serving regular trays to common fare trays and does not recall a time when he failed to do so. (*Id.* ¶ 9a.)

**C. Taylor's Response**

In his response to the motion for summary judgment and in his own motion for summary judgment, Taylor repeats the overarching allegations of his complaint, and then includes his

---

[3] Fields's affidavit contains misnumbered paragraphs, such that there are two paragraphs 8 and two paragraphs 9. The court refers to the first of each as paragraph 8a or 9a, and the second as 8b or 9b.

conclusory and largely unsupported opinions about the credibility of Hess and Fields and calls Nurse Townsend "racist." (Mot. Summ. J. 3, Dkt. No. 110.) He also accuses medical officials at Wallens Ridge of being "so evil" and of fabricating "medical legal documents," but offers no specifics or details about which medical records were fabricated or by whom, or about how they are incorrect. He also includes copies of pertinent documents filed in the case (including his amended complaint, defendants' answer, and defendants' affidavits, discovery responses from defendants, and copies of relevant grievances and policies. (*See generally* Dkt. No. 99-1.)

## II. DISCUSSION

### A. Summary Judgment Standard

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990).

B.  **Claim 1 – Eighth Amendment Claim Against Hess**

To summarize, and construing the facts in the light most favorable to Taylor, Taylor gave an emergency grievance to Hess on September 25, 2023, in which he complained that he was spitting up blood. Hess, who is not a medical provider and would have no role in determining what response was made to an emergency grievance, failed to turn in the grievance to the medical department. Later, during an investigation into the matter, Hess told the investigator that he never took an emergency grievance from Taylor. But the receipt had Hess's signature and so the grievance was deemed founded. (Am. Compl. 2–3; Receipt, Dkt. No. 99-1, at 41; *see also* Taylor Aff. dated Oct. 19, 2022, Dkt. No. 101.)

During the five days following Taylor's submission of that grievance, nurses were in Taylor's pod twice a day, but Taylor did not complain to them about spitting up blood. He was seen five days later by a physician for a intake physical, as he had recently transferred to Wallens Ridge. During that physical, he did not complain of, or refer to, spitting up blood. He later complained about vomiting, but not vomiting blood. And over the next month, he was seen multiple times by medical providers and complained before and during those visits about other ailments, including vomiting on one visit, but he did not complain about spitting up blood.

With regard to a medical condition, and to demonstrate deliberate indifference of a constitutional magnitude, an inmate must show that (1) he has a medical condition that has been "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" and (2) the defendant "had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." *Gordon v. Schilling*, 937 F.3d 348, 356–57 (4th Cir. 2019). The first component is an objective inquiry and the second is subjective. *Heyer v. U.S. Bureau of Prisons*,

849 F.3d 202, 209–10 (4th Cir. 2017).

Defendant Hess argues that a report by the plaintiff that he spit up blood is not a serious medical condition. And Hess correctly notes that nowhere does Taylor state how often he spit up blood or how much blood he spit up, both potentially relevant facts. Nonetheless, for purposes of this opinion, the court assumes, without deciding, that spitting up blood could constitute a serious medical need. *See Scinto v. Stansberry*, 841 F.3d 219, 231–32 (4th Cir. 2016) (concluding that where prisoner complained of extreme stomach pain, was throwing up vomit and blood, and became incontinent, he had alleged a serious medical need); *Jamison v. Clarke*, No. 7:18-CV-00504, 2020 WL 618838, at *7 (W.D. Va. Feb. 10, 2020) (holding that significant pain, frequent vomiting and blood in prisoner's vomit and stool described a "serious medical condition" sufficient to survive a motion to dismiss). *Cf. Quintana v. Santa Fe Cty. Bd. of Comm'rs*, 973 F.3d 1022, 1029–30 (10th Cir. 2020) (reasoning that although frequent vomiting alone might not qualify, an Eighth Amendment claim premised on reports that plaintiff was vomiting blood stated an obvious serious medical need).

The deficiency in Taylor's claim, however, is that he does not allege that he ever told Hess what was stated in his emergency grievance or why he needed one, nor does he allege that Hess actually observed him spitting up blood, either on September 25 or any other occasion, nor does he alleged that he observed Hess reading his grievance. As noted, for Hess to be held individually liable for the delay in treating the symptom of vomiting blood, Taylor must allege facts to show that Hess had actual knowledge of his symptoms and failed to take any response. *See Gordon*, 937 F.3d at 356–57 (emphasizing that a defendant violates the Eighth Amendment only when he has *actual* knowledge of the plaintiff's medical condition and disregards any need for treatment). Hess has testified that he has no recollection of observing Taylor spitting up

9

blood or knowing that Taylor was allegedly spitting up blood.  And even if Hess received the emergency grievance as alleged by Taylor (as the receipt indicates), it does not mean he read it. His job was to give the grievance to supervisory personnel, who would determine whether and when to address it and if it should be forwarded to medical.  He failed to do that.  But there is an absence of any evidence that Hess *actually knew* Taylor was spitting up blood and failed to take steps to address that medical need.

Throughout his filings, Taylor emphasizes that defendant Hess lied to his supervisor about receiving the grievance, but even assuming that is true, Taylor still has failed to put forth *facts* from which a jury could find that Hess had actual knowledge of Taylor's alleged medical condition and subjectively believed that there was a risk to Taylor's health as a result of not turning in the grievance or even that he acted intentionally in not handing in the grievance, if that is what occurred.

Furthermore, at most Hess's conduct resulted in a five-day delay in medical treatment. The Fourth Circuit, in several unpublished decisions, has held that where a prisoner's claim is based on a delay in treatment, he must show that the delay caused him to suffer "substantial harm."  *Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008).  *See also Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018) (explaining that where a claim is based not on a denial of medical care, but a claim that the care has been delayed, "we have ruled that there is no Eighth Amendment violation unless 'the delay *results* in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain'") (citing *Webb*, 281 F. App'x at 166-67 and *Sharpe v. S.C. Dep't of Corr.*, 621 F. App'x 732, 734 (4th Cir. 2015)).  The *Formica* court further noted that both *Webb* and *Sharpe* are "consistent . . . with the precedent of other courts of appeals." *Formica*, 739 F. App'x at 755

(citations omitted). Although Taylor makes conclusory statements like he was in unspecified emotional and physical pain and that his medical treatment was delayed, he has not alleged any substantial harm as a result of a five-day delay in treatment, and his claim fails for this reason alone. Moreover, Taylor's medical records make clear that, even when he had the opportunity to see a physician on September 30—a mere five days later—and again in the following weeks, he never reported or complained of spitting up blood.

Additionally, Taylor has not presented any proof that Hess's failure to submit the emergency grievance (assuming that it what happened) was an intentional act, as opposed to a negligent mistake. And negligence alone does not violate the Eighth Amendment. As the Fourth Circuit has explained, "negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference." *Webb*, 281 F. App'x at 166. Instead, the treatment must be "so grossly incompetent, inadequate, or excessive as to shock the conscience." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. Taylor has presented no evidence from which a reasonable jury could find that Hess intentionally failed to submit Taylor's emergency grievance.

For all of these reasons, Hess is entitled to summary judgment as to Taylor's first claim.

## C. Claim 2 – First Amendment Claim Against Hess and Fields[4]

A First Amendment free-exercise claim requires a showing that the defendant imposed a substantial burden on the plaintiff's religious exercise. *Greenhill v. Clarke*, 944 F.3d 243, 253

---

[4] In their memorandum supporting their summary judgment motion, defendants reference a claim that defendants retaliated against Taylor by assaulting him. (Mem. Supp. Mot. Summ. J. 13, Dkt. No. 91.) For several reasons, the court believes this is a typographical error (or a "copy and paste" error). First, the document cited for the proposition is not Taylor's complaint, but defendants' answer, which nowhere states that. Second, Taylor's amended complaint does not appear to argue at any point that he was assaulted or retaliated against by Hess or Fields, only that they violated his religious rights.

(4th Cir. 2019) (setting forth the elements of a claim alleging a violation of the Free Exercise Clause in this context, which requires plaintiff to demonstrate that he holds a "sincere religious belief" and that "a prison practice or policy places a substantial burden on his ability to practice his religion").  The plaintiff bears the initial burden of establishing that the government's actions substantially burdened his exercise of religion.  *Holt v. Hobbs*, 574 U.S. 352, 358 (2015).  "[A] substantial burden is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning the precepts of her religion on the other hand."  *Greenhill*, 944 F.3d at 250 (citing *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)).

"[A]t a minimum the substantial burden test requires that a . . . plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice."  *Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir. 2007) (citing *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)), *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011).  No substantial burden occurs if the government action merely makes the "religious exercise more expensive or difficult," but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion.  *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 739 (6th Cir. 2007).[5]

---

[5] Where *a policy or regulation* substantially interferes with the plaintiff's religious rights, it will not violate the First Amendment so long as it is "reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89 (1997).  The *Turner* test requires courts to look at four factors.  *Wall v. Wade*, 741 F.3d 492, 499 (4th Cir. 2014) (setting forth four factors); *Turner*, 482 U.S. at 89–92 (same).  Here, Taylor is not challenging a policy.  Instead, there was a violation of VDOC's policy, as acknowledged during the grievance process, and *Turner* is inapplicable.

Taylor has not put forth sufficient evidence from which a reasonable jury could find a First Amendment violation. First of all, it is not clear that the failure to change gloves or to keep the trays separate created a "substantial burden" on Taylor's rights on the facts here. The practice apparently occurred for a very brief period of time (less than a week based on Taylor's allegations), and the violations were committed—at most—by Hess on four occasions and Fields on two. On similar facts, courts have held that a plaintiff had not shown a "substantial burden." In *Booker v. Engelke*, No. 7:16cv00084, 2019 WL 1372165, at *7, 9 (W.D. Va. Mar. 26, 2019), for example, the court granted summary judgment for defendants on plaintiff's First Amendment claims regarding his religious meal trays. There, the court found no substantial burden where plaintiff alleged that: (1) he was denied a religious meal tray on one occasion, which was the result of either negligence or an isolated record-keeping error; and (2) on two other consecutive days he was forced to choose between missing meals or eating foods that would violate his religious beliefs. *See also Blount v. Jabe*, No. 7:07-cv-00480, 2007 U.S. Dist. LEXIS 81789, at *15–16 (W.D. Va. Nov. 2, 2007) (holding that plaintiff failed to show a substantial burden on his exercise of religion based on two instances of being served trays out of conformity with his preferred religious diet). Here, there were a few additional instances of contaminated meal trays than in *Booker* or *Blount*, but it still likely does not constitute a "substantial burden."

Regardless—and importantly—to prove a First Amendment violation, a prisoner must show a "conscious or intentional interference" with his rights; mere negligence is insufficient. *Lovelace*, 472 F.3d at 194–95, 201–02; *Wall v. Wade*, 741 F.3d 492, 500 n.11 (4th Cir. 2014) (noting same); *Blount*, 2007 U.S. Dist. LEXIS 81789, at *13 ("Only intentional conduct is actionable under the Free Exercise Clause . . . ."). Taylor has presented no evidence from which a jury could find that the short-lived practice was intentional on the part of either Hess or Fields.

13

Because of this, defendants are entitled to summary judgment as to plaintiff's First Amendment claims, as well.

### D. Taylor's Motion for Summary Judgment

Taylor's motion for summary judgment requires the court to view the evidence in the light most favorable to defendants. So viewed, Taylor's motion must be denied for the same reasons that defendants' motion must be granted: Taylor has not presented facts from which a reasonable factfinder could find in his favor, even construing them in his favor.

### III.  CONCLUSION

For the reasons stated above, the court will grant defendants' motion for summary judgment as to the entirety of Taylor's complaint and will deny Taylor's motion. An appropriate order will be entered.

Entered: June 12, 2023.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge